**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VINCENT MUGNOLO,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP MORRIS USA INC., et al.,<br><br>Defendants. | Case No. 26 cv 2852<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vincent Mugnolo developed chronic obstructive pulmonary disease (COPD), allegedly from smoking cigarettes manufactured, marketed, and sold by Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Liggett Group LLC (Manufacturer Defendants). He filed a lawsuit against the Manufacturer Defendants and Walgreen Co. (Walgreens) in the Circuit Court of Cook County, bringing various state law claims, including negligence and strict liability claims against Walgreens. [1-1].

Manufacturer Defendants removed the case to federal court, asserting complete diversity even though both Mugnolo and Walgreens are Illinois citizens. [1]. Manufacturer Defendants argue that the Court should disregard Walgreens' citizenship for diversity purposes because Mugnolo fraudulently joined Walgreens as a defendant. Mugnolo has now filed a motion to remand, contending that Manufacturer Defendants cannot establish fraudulent joinder. [17]. Mugnolo also requests attorneys' fees and Rule 11 sanctions. Manufacturer Defendants and Walgreens have separately filed motions to dismiss under Rule 12(b)(6). [15], [27]. For the reasons stated below, the Court remands this case to the Circuit Court of Cook County because Manufacturer Defendants have failed to establish fraudulent joinder.

## Background

The following facts are taken from Mugnolo's Complaint. Mugnolo had his first cigarette when he was 12 years old and became a regular smoker by the age of 14. [1-1] ¶ 3. In the years that followed, he smoked up to two packs of cigarettes per day. *Id.* Mugnolo purchased cigarettes that were designed, manufactured, marketed, and distributed by Manufacturer Defendants. *Id.* ¶ 2. He also bought cigarettes from Walgreens. *Id.* ¶ 4. Mugnolo later switched to Marlboro Light cigarettes, relying on

Defendants' representations that they were a safer alternative. *Id.* ¶ 3. He attempted to quit smoking several times, using nicotine patches and gum, and worked with his primary care doctor. *Id.* However, he could not quit and continues to smoke to this day. *Id.* Mugnolo was diagnosed with COPD in March 2024, allegedly caused by smoking. *Id.* ¶ 9.

According to Mugnolo, Walgreens enjoyed a close, multi-decade relationship with the tobacco industry. *Id.* ¶ 164. As evidence of the strength of that relationship, Walgreens offered to use its position as a "health center" to gain public support for tobacco companies amidst the controversy surrounding smoking in 1977. *Id.* ¶¶ 166–68. Walgreens gave joint presentations with tobacco companies that identified its drug stores as an "efficient outlet" for targeting customers, and it received exclusive distribution rights for certain cigarette brands. *Id.* ¶¶ 30–31, 33. Walgreens also conducted joint promotions with manufacturers, worked with tobacco advocacy groups, and opposed FDA regulations over cigarettes. *Id.* ¶¶ 26, 28–32.

Because of its relationship with Manufacturer Defendants, Mugnolo claims that Walgreens also knew more than the public about the hazards posed by cigarettes. *Id.* ¶¶ 156–58. For example, in 1993, Walgreens asked cigarette manufacturers to indemnify it against future liability for selling tobacco products, and in 2008, R.J. Reynolds informed Walgreens that "[n]o tobacco product has been shown to be safe and without risks." *Id.* ¶¶ 27, 169–70. As of 2018, Walgreens' website acknowledged that every puff of cigarette smoke contains 7,000 chemicals, many of which are toxic. *Id.* ¶ 160. Walgreens' website also cautioned that smoking affects consumers "in more ways than you know" and harms multiple bodily systems—information which, as Mugnolo alleges, consumers are generally not aware of. *Id.* ¶¶ 162–63. Despite this superior knowledge, Walgreens continues to sell cigarettes. *Id.* ¶ 173.

## Legal Standard

Turning to first principles, a defendant can remove a case from state court to federal court if they can establish diversity jurisdiction. *See* 28 U.S.C. § 1441(a)–(b). Where a defendant invokes diversity jurisdiction, they must demonstrate complete diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing jurisdiction, and courts should construe the removal statute narrowly, resolving any doubts in favor of remand. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

In a diversity case, a plaintiff can select the forum most advantageous to them. *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 433 (2026) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)). This includes a "right to choose a state forum by purposefully and properly joining a nondiverse defendant against whom they could not proceed in federal court[.]" *Id.* This deference to a plaintiff's choice of forum represents a core tenet of diversity jurisdiction. *In re*

*Abbott Lab'ys Preterm Infant Nutrition Prods. Liab. Litig*, 184 F.4th 608, 615 (7th Cir. 2026). And, though it may seem incongruent with the purpose of the removal statute—to provide defendants with a means to escape the plaintiff's home forum—it is consistent with the general desire to limit the jurisdiction of federal courts. *Id.* (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992)).

In keeping with these principles, parties seeking a federal forum based on fraudulent joinder bear a heavy burden. *In re Abbott Lab'ys*, 184 F.4th at 616. They must show that the plaintiff either pled false jurisdictional facts or that the plaintiff has "no chance of success" in their claims against the non-diverse defendants. *Id.* at 615. In this second scenario, courts do not consider the plaintiff's motives for joining the non-diverse defendant. *Poulos*, 959 F.2d at 73. After resolving all issues of law and fact in favor of the plaintiff, the defendant must show that there is no reasonable possibility that the plaintiff could prevail against the in-state defendant. *Id*. This test is even more favorable to a plaintiff than the standard for ruling on a Rule 12(b)(6) motion. *Schur*, 577 F.3d at 764.

## Discussion

Of the nine counts in his suit, Mugnolo brings two against Walgreens: negligence and strict liability. Under the fraudulent joinder standard, the question before the Court is whether there is a reasonable possibility Mugnolo could prevail on either of these claims. *Poulos*, 959 F.2d at 73. If Mugnolo has a reasonable chance of success on even one of them, this defeats complete diversity, and the Court must remand the case to state court. *See Andersen v. Phillip Morris USA Inc.*, 2020 WL 433867, at *2 (N.D. Ill. Jan. 28, 2020). In seeking remand, Mugnolo requests attorneys' fees and sanctions under Rule 11, and he also argues that Manufacturer Defendants' snap removal of the case is an independent basis for remand.

### I. The Negligence Claim

The Court starts with Mugnolo's negligence claim. To state a cause of action for negligence in Illinois, a plaintiff "must allege facts that establish the existence of a duty of care owed by defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006)).[1] Mugnolo claims that Walgreens had a duty to use reasonable

[1] Manufacturer Defendants at one point suggest that the existence of a fiduciary relationship between Mugnolo and Defendants is necessary for a negligence claim (see Manufacturer Defs.' Resp. at 5), but this is incorrect. Illinois law imposes a broad duty of care in the negligence context and does not require the existence of a fiduciary duty. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) (Every person or business "owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon

care in placing products into the stream of commerce, but it breached that duty by selling cigarettes that it knew were likely to cause serious injuries. [1-1] ¶¶ 177–78. As a result, Mugnolo developed a nicotine addiction and later COPD. *Id.* ¶¶ 179–80.

Manufacturer Defendants respond that Mugnolo's negligence allegations cannot reasonably succeed. Specifically, they argue that 1) he has not alleged any specific facts regarding Walgreens' superior knowledge of the dangers of cigarettes; 2) there is no proximate causation; and 3) Mugnolo's claims are preempted under the Federal Cigarette Labeling and Advertising Act (FCLAA). Each of these arguments fails.

First, in asserting that Mugnolo has not presented enough facts of Walgreens' superior knowledge, Manufacturer Defendants go beyond what the fraudulent joinder standard requires. *See Schur*, 577 F.3d at 764 (noting that the fraudulent joinder standard is more favorable than the Rule 12(b)(6) standard). Mugnolo needs only to show a reasonable possibility that he can state a cause of action for negligence, and he does. For example, Mugnolo asserts that Walgreens partnered with the tobacco industry in 1977 to support the industry's efforts in messaging about smoking's impact on public health. [1-1] ¶¶ 164–68. Walgreens conducted joint presentations with tobacco companies, worked with tobacco advocacy groups, and opposed regulations over cigarettes. *Id.* ¶¶ 26, 28–32. In 1993, Walgreens also asked cigarette manufacturers to indemnify it from liability for selling tobacco products, and in 2008, it learned directly from Defendant R. J. Reynolds that tobacco products were not without risk. *Id.* ¶¶ 27, 169–70. Taken together, these allegations reasonably allege that Walgreens and Manufacturer Defendants had a close relationship, allowing Walgreens to obtain knowledge not available to the public and, despite that knowledge, continue to sell cigarettes, harming Mugnolo. Viewing the alleged facts and inferences in Mugnolo's favor, Mugnolo alleges enough to support a reasonable possibility that he may prevail.

Next, Manufacturer Defendants argue that Mugnolo cannot demonstrate proximate cause because he neither explains how Walgreens' superior knowledge caused his injury, nor does he allege the timing, frequency, or quantity of cigarettes he purchased from Walgreens. But, again, this sort of fact-pleading is not necessary under fraudulent joinder's "less searching" standard. *See Jones v. Philip Morris USA, Inc.*, 2021 WL 12179449, at *2 (N.D. Ill. Feb. 16, 2021). Mugnolo alleges that he bought cigarettes from Walgreens, that smoking those cigarettes led to his addiction and COPD, and that, had Walgreens not sold cigarettes that were defective and dangerous, he would have smoked fewer cigarettes or quit altogether. [1-1] ¶¶ 4, 179–80. This, quite simply, is sufficient to show a reasonable chance of success on

contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.").

proximate cause. At this early stage of litigation, the Court finds that Mugnolo can reasonably show proximate cause against Walgreens.

Lastly, Manufacturer Defendants assert that Mugnolo's negligence allegations are preempted under the FCLAA because they amount to a failure-to-warn claim. The FCLAA states that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 524 (1992) (affirming that claims are preempted when they require additional warnings outside of the FCLAA's mandates).

The Court rejects this argument for two reasons. First, the *Cipollone* decision focused on failure-to-warn claims against manufacturers, not retailers like Walgreens. *See Cipollone*, 505 U.S. at 524. Whether the FCLAA preempts failure-to-warn claims against retailers remains an open question, *see Smith v. Philip Morris USA Inc.*, 2019 WL 4750119, at *4 (N.D. Ill. Sep. 30, 2019), and under fraudulent joinder, all questions of fact and *law* are construed in Mugnolo's favor. *See Poulos*, 959 F.2d at 73. Because the FCLAA's application to retailers remains an open question of law, this Court cannot conclude that Mugnolo's negligence claim is preempted. Second, even if Mugnolo asserted a failure-to-warn theory of negligence (which he claims he does not), his claims would only be partially preempted. The FCLAA does not preclude other negligence theories, like general negligence, which Mugnolo plausibly asserts here. *See Mitchell v. Philip Morris USA Inc.*, 2019 WL 1787587, at *4 (N.D. Ill. Apr. 24, 2019) (refusing to construe the complaint "so narrowly as to only encompass a failure-to-warn theory"); *Jones*, 2021 WL 12179449, at *2 (even if plaintiff asserted a failure-to-warn claim, he had other negligence theories to rely on); *Sarno v. Philip Morris USA, Inc.*, 2026 WL 2241663, at *3 (N.D. Ill. Aug. 3, 2026) (rejecting FCLAA preemption where the plaintiff did not explicitly advance a failure-to-warn theory). The Court, therefore, declines to find that Mugnolo's negligence claim is preempted.

Manufacturer Defendants urge the Court to reach a different conclusion, relying on two district decisions in which courts found fraudulent joinder. *See Clay v. Philip Morris USA Inc.*, 2018 WL 11198356, at *3 (N.D. Ill. Nov. 6, 2018) (determining retail defendants were fraudulently joined because plaintiff's allegations were conclusory); *Int'l Bhd. of Teamsters Loc. 734 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 1998 WL 242130, at *4 (N.D. Ill. May 8, 1998) (finding fraudulent joinder where plaintiff made only "bald assertions" about retail defendants). Neither decision helps Manufacturer Defendants. In both *Clay* and *Teamsters*, the plaintiffs relied on conclusory assertions to connect the non-diverse defendants with cigarette manufacturers. *Clay*, 2018 WL 11198356, at *3; *Teamsters*, 1998 WL 242130, at *4–5. Unlike the *Clay* and *Teamsters* plaintiffs, Mugnolo includes specific facts showing a reasonable possibility that Walgreens negligently sold him cigarettes, and the Court finds neither decision persuasive.

The Court's conclusion should not come as a surprise to Manufacturer Defendants—at least eight other courts in this district have sent these exact defendants and claims back to state court because there was no fraudulent joinder. *See Sarno v. Philip Morris USA, Inc.*, 2026 WL 2241663 (N.D. Ill. Aug. 3, 2026); *Jordan v. R.J. Reynolds Tobacco Co.*, 2021 WL 4498960 (N.D. Ill. Apr. 26, 2021); *Jones v. Philip Morris USA, Inc.*, 2021 WL 12179449 (N.D. Ill. Feb. 16, 2021); *Dispenza v. Philip Morris USA Inc.*, No. 20 C 5190, Doc. 37 (N.D. Ill. Dec. 2, 2020); *Stone v. Philip Morris USA Inc.*, No. 20 C 5198, Doc. 38 (N.D. Ill. Oct. 26, 2020); *Andersen v. Philip Morris USA Inc.*, 2020 WL 433867 (N.D. Ill. Jan. 28, 2020); *Smith v. Philip Morris USA Inc.*, 2019 WL 4750119 (N.D. Ill. Sep. 30, 2019); *Mitchell v. Philip Morris USA Inc.*, 2019 WL 1787587 (N.D. Ill. Apr. 24, 2019). The facts and law in this case lead to the same conclusion.

In sum, the Court finds that Manufacturer Defendants have failed to establish that Mugnolo cannot reasonably succeed on his negligence claim against Walgreens.[2] For that reason, there is no fraudulent joinder, and the case must be remanded to state court.

## II. Attorneys' Fees and Rule 11 Sanctions

Mugnolo requests that the Court award attorneys' fees and Rule 11 sanctions because Manufacturer Defendants improperly removed the case. The Court denies both requests.

Under 24 U.S.C. § 1447(c), a court may order a party to pay attorneys' fees after it decides to remand a case. Courts award attorneys' fees when the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). An objectively reasonable basis exists when clearly established law forecloses removal. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). Mugnolo argues that he is entitled to fees because Manufacturer Defendants' conduct was both frivolous and legally insufficient.

Despite Mugnolo's argument, no Supreme Court or Seventh Circuit law squarely addresses the circumstances presented in his case. And, contrary to Mugnolo's suggestion, the fact that other district courts have remanded similar complaints does not indicate that clearly established law mandates it. *See Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 949 (7th Cir. 2003) (stating that a district court decision is not "an authoritative statement of Illinois law"). Manufacturer Defendants' arguments may not have won the day here, but their assertions were

[2] Because the court finds that there is a reasonable possibility of success on the negligence claim, the court does not need to consider Mugnolo's strict liability allegations against Walgreens.

neither frivolous nor unreasonable as the *Clay* and *Teamster* courts both denied remand. So, the Court finds an order for attorney's fees inappropriate.

Mugnolo also demands this Court sanction Manufacturer Defendants under Rule 11. He asserts that Manufacturer Defendants' removal was not warranted under existing law and served only to harass him and delay his case. Not so. As just discussed, though Manufacturer Defendants' arguments failed, they had some basis in existing law. Moreover, as Mugnolo admits, he has not complied with his own Rule 11 obligations in seeking sanctions—he failed to file his Rule 11 request as a separate motion and failed to observe the 21-day safe harbor the Rule requires. *See* Fed. R. Civ. P. 11(c)(2). Accordingly, the Court denies this request.

## III. Snap Removal

For completeness, the Court briefly addresses Mugnolo's snap removal arguments. Manufacturer Defendants removed the case to federal court before Walgreens was served, and Mugnolo asserts that, based on other "controlling authority" in this district, this snap removal is an independent basis for remand. *See Norwegian Air Shuttle ASA v. Boeing Co.*, 530 F. Supp. 3d 764, 769–70 (N.D. Ill. 2021); *In re Abbott Lab'ys. Preterm Infant Nutrition Prods. Liab. Litig.*, 2022 WL 2257182, at *6 (N.D. Ill. June 23, 2022).

Mugnolo's arguments are mistaken for several reasons. Most importantly, the Seventh Circuit has neither adopted nor rejected snap removal as a practice, so there is no "controlling authority" for this Court to defer to. *See Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 548 n.3 (7th Cir. 2025). While other district court decisions may be persuasive, they do not control this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (stating that district court decisions are not binding on other district courts, even in the same district). And, contrary to Mugnolo's one-sided account, courts in this district are split on the issue. *Compare, e.g.*, *Selective Ins. Co. of S.C. v. Target Corp.*, 2013 WL 12205696, at *1 (N.D. Ill. Dec. 13 2013) (permitting snap removal because the statute requires that defendant must be "properly joined *and* served") (emphasis added); *Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 936–37 (N.D. Ill. 2017) (finding snap removal was proper under plain reading of statute), *with Norwegian Air*, 530 F. Supp. 3d at 769 (rejecting snap removal because it improperly eliminates the forum defendant rule); *In re Abbott Lab'ys.*, 2022 WL 2257182, at *6 (finding that the removal statute does not permit snap removal). Without controlling authority from the Seventh Circuit, the Court is not bound by other district court decisions to remand for snap removal.

Even so, Manufacturer Defendants' snap removal would require remand based on the parties' citizenship, not on the snap removal itself. Walgreens and Plaintiff are both citizens of Illinois, and, without fraudulent joinder, the case lacks federal diversity jurisdiction from the start.

## CONCLUSION

For the reasons stated above, the Court grants Mugnolo's motion for remand and denies his request for attorneys' fees and Rule 11 sanctions. Because the Court remands the case for lack of complete diversity, Defendants' motions to dismiss are denied as moot.

**SO ORDERED.**

Dated: October 13, 2026

Sunil R. Harjani
United States District Judge